IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. CASE NO. 2:18cr353-ECM |
| | ) | (WO) |
| ANA ESPINOZA-OCHOA | ) | |

**MEMORANDUM OPINION**

On October 19, 2018, the Court entered an order denying the government's appeal of the Magistrate Judge's order of release of the defendant (doc. 18) filed on September 14, 2018. In that order, the Court indicated that a memorandum opinion detailing the denial of the appeal was forthcoming. This is that memorandum opinion.

A brief recitation of the procedural history of this case is necessary for context. On August 8, 2018, a three-count indictment was returned against Ana Espinoza-Ochoa ("Ochoa") charging her with illegal reentry of a deported alien in violation of 8 U.S.C. § 1326(a) and two counts of making a false statement in violation of 18 U.S.C. § 101. On September 6, 2018, the defendant was arrested and made her first appearance in this Court. At that time, the government orally moved for Ochoa's detention alleging that she was a flight risk. On the same day, the Bureau of Immigration and Customs Enforcement ("ICE") filed a detainer with the United States Marshal to hold the defendant in the event that she was released by the Court.

On September 12, 2018, the United States Magistrate Judge held a detention hearing pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142. At the conclusion of the detention hearing, the Magistrate Judge determined that Ochoa was not a risk of flight and ordered her released on "electronic monitoring with the usual conditions of release." (Doc. 22 at 42). The defendant was not released, however, because ICE executed its detainer and assumed custody of her. Immediately upon taking the defendant into custody, ICE transferred her to the LaSalle Detention facility in Jena, Louisiana, ostensibly to begin removal proceedings.

On September 14, 2018, the government filed an appeal of the Magistrate Judge's detention order and a motion to stay. The Magistrate Judge denied the government's motion to stay.

On September 17, 2018, utilizing form USA-475, the Assistant United States Attorney requested that ICE return the defendant to the district for trial on November 5, 2018. On October 11, 2018, ICE released custody of the defendant to the United States Marshal solely at the request of the Assistant United States Attorney. On the same day, ICE executed another detainer on the defendant.

On October 17, 2018, the Court held a hearing to determine the location of the defendant, and to determine the basis for her detention in light of the Magistrate Judge's order that she be released. On October 19, 2018, the Court denied the

government's appeal of the Magistrate Judge's release order, and the defendant was released on conditions. ICE did not execute its second detainer, and the defendant remains on bond pending sentencing.

## DISCUSSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The Bail Reform Act of 1984 provides that if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). While the Bail Reform Act provides a mechanism for detaining a defendant in certain limited circumstances, the Act was enacted to prevent needless pretrial detention by defendants, and the presumption is release absent a demonstration that the defendant is likely to flee or is a danger to the community.[1] The policy consideration of the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance

---

[1] In cases involving "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act," there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person." *See* 18 U.S.C. § 3142(e)(3)(A). The rebuttable presumption is inapplicable in this case.

of the defendant." *United States v. Price*, 773 F.2d 1256, 1527 (11th Cir. 1985).

Throughout the course of these proceedings, the United States argued that the defendant should be detained because she was likely to flee to avoid deportation.[2] (Doc. 18 at 3, 4, 6, 7, & 8). The burden of persuading the Court that the defendant is a flight risk rests with the government. *United States v. Hurtado*, 779 F.2d 1467, 1478 (11th Cir. 1985). After a detention hearing, the Magistrate Judge determined that the defendant was not a flight risk. This Court conducted an independent *de novo* review of the Magistrate Judge's determination, and agreed with the finding that the government had failed to meet its burden of demonstrating that the defendant was a flight risk. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988).

The government relied primarily, if not solely, on the defendant's risk of flight as the reason why no condition of release could reasonably assure her appearance at trial. In its appeal, the government presented the Court no new evidence that would alter the finding that the defendant did not present a risk of flight.[3] It was undisputed that the defendant has significant ties to the community. She is married

---

[2] The United States did not argue that Ochoa was a danger to others or the community.

[3] At the hearing on October 17, 2018, the United States argued that the defendant was being returned to this district for a hearing on the appeal. However, in their notice of appeal, the government did not ask for a hearing and specifically requested that the Court review the Magistrate Judge's order and revoke the order granting release. *See* Doc. 18.

In their motion to stay (doc. 19), the United States suggested in passing that "[t]he Court should order Defendant be detained pending trial, or order an evidentiary hearing to resolve the detention issue." (*Id*. at 3). An appeal of the detention order does not give the government a second bite at the apple.

and has three children in this district. In the almost twenty years since she came to the United States, the defendant has not returned to Mexico or otherwise left this country. Under the specific facts of this case, the Court concluded that the mere fact that Ochoa may be here illegally in and of itself was insufficient to conclude that she was a risk of flight.

Relying heavily on the ICE detainer, the United States also argued that there was "no condition or combination of conditions" that would "reasonably assure" the defendant's appearance at trial because once ICE took custody of the defendant, ICE would deport her, and deprive the government of the opportunity to prosecute her. The Court finds that the government's position is disingenuous in light of the fact that as soon as ICE executed its detainer in September, the United States began the process of securing the defendant's presence for trial. Shortly after ICE obtained custody of the defendant from the United States Marshal, on September 17, 2018, the Assistant United States Attorney executed a form to secure her presence.[4] Thus, it is clear to the Court that the government intended to have the defendant present for trial.

The United States further argued that because it could not ensure that the

---

[4] The Court will not belabor the fact that the form used by the United States was inapplicable and an inappropriate means by which to secure the defendant's presence. The United States Attorney has recognized its error and assured the Court that it will utilize other procedures to secure federal detainees in the future. *See* Doc. 39.

defendant would be present at trial due to the administrative deportation proceedings initiated by ICE, the defendant should be held pursuant to the "risk of non-appearance" clause of the Bail Reform Act. The Court disagrees. The "risk of non-appearance" "must involve an element of violation." *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015). Any risk of non-appearance in this case was created by the United States and its executive arms, not by the defendant.

More importantly, the Bail Reform Act does not create a rebuttable presumption that removable aliens should be detained. *See Ailon-Ailon*, 875 F.3d at 1338.

> "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings," but instead set forth "specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence.." [*United States v.*] *Santos-Flores*, 794 F.3d [1088,] 1090-91 [(9th Cir. 2015)]. The Act provides that a removeable alien may be temporarily detained for up to ten days to permit ICE to take custody. § 3142(d)(2). If ICE declines to do so, such "person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions governing release pending trial or deportation or exclusion proceedings." *Id*. This provision demonstrates that a defendant "is not barred from release because he is a deportable alien." *United States v. Adomako*, 150 F.Supp.2d 1302, 1307 (M.D. Fla. 2001).

*Id.* (footnote omitted).

Congress could have created a rebuttable presumption of detention for removable aliens, but chose not to do so. Taking the government's position to its

logical conclusion, no defendant charged with being an illegal alien or a deportable alien would be eligible for bail under the Bail Reform Act. The Act provides for the temporary detention of noncitizens in certain cases but those provisions would be unnecessary if noncitizens were ineligible for bail in the first instance. Consequently, the Court concludes that the Bail Reform Act does not reach that far.

"This case causes the Court to consider the interplay of two different laws, the Bail Reform Act of 1985, . . . and the Immigration and Nationality Act of 1965." *United States v. Blas*, 2013 WL 5317228 (S.D. Ala. Sept. 20, 2013). As many courts have noted, any statutory conflict between the Immigration and Nationality Act and the Bail Reform Act should be resolved between the executive agencies, and not the Courts. *See Santos-Flores*, *supra*; *Ailon-Ailon*, 875 F.3d at 1339; *United States v. Argueta-Espinoza*, 2018 WL 4492226 (D. Neb. Sept. 19, 2018).

> [T]he argument that there is an "ICE detainer" exception to the Bail Reform Act, such argument has been rejected by numerous courts to have addressed the issue, and is likewise rejected by the undersigned. *Trujillo–Alvarez,* 900 F.Supp.2d at 1176–1178, quoting, *e.g., United States v. Bartera–Omana,* 638 F.Supp.2d 1108, 1111 (D.Minn.2009) (" '[T]he government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be.... If the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth [in the Bail Reform Act] at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer."); and *United States v. Montoya–Vasquez,* 2009 WL 103596, *5 (D.Neb. Jan.13, 2009) (" 'If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places

7

> detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act.... If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not."); *see also Sanchez–Martinez, supra,* at *4 ("Notwithstanding the fact that ICE took the initiative to notify the United States Attorney's Office of Mr. Sanchez–Martinez's status and apparent violation of 8 U.S.C. § 1326(a) and (b)(2), thereby triggering the instant prosecution, the government now argues that ICE will knowingly frustrate that prosecution by removing Mr. Sanchez–Martinez from the United States 'prior to the completion of his case.' I am not convinced that the government's position is consistent with the Bail Reform Act, 18 U.S.C. § 3142, the Immigration and Nationality Act, 8 U.S.C. § 1231, or prevailing case law. Indeed, the government's argument effectively would make pretrial detention automatic in every case involving a violation of 8 U.S.C. § 1326(a) and (b)(2)."). More importantly, to the extent it is Officer Graham's position, and the concomitant position of the United States Attorney, that he retains the ability at all times to simply take Blas into administrative custody, such position cannot be countenanced by this Court—particularly under the circumstances of this case—because while ICE may well have the ability to take an alien like Blas back into administrative custody for the purpose of deporting him, "nothing permits ICE (or any other part of the Executive Branch) to disregard the congressionally-mandated provisions of the BRA by keeping a person in detention for the purpose of delivering him to trial [or any other court proceedings] when the BRA itself does not authorize such pretrial detention." *Trujillo–Alvarez,* 900 F.Supp.2d at 1178; *see also id.* at 1179 ("What neither ICE nor any part of the Executive Branch may do ... is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.").

*Blas*, 2013 WL 5317228 at * 6.

While the Immigration and Nationality Act permits ICE to detain a deportable alien, once ICE engages the United States Attorney who then seeks the jurisdiction of this Court, ICE cannot then complain when this Court's jurisdiction trumps its

administrative deportation proceedings. ICE obviously has the authority to wait to exercise its detainer until the completion of the criminal prosecution because it has not attempted to execute its second detainer on the defendant.

The United States, in pursuing this prosecution, has invoked this Court's jurisdiction. When the Magistrate Judge ordered the defendant's release under the Bail Reform Act, the government was bound by that decision. The government cannot now seek to avoid the very jurisdiction it sought by circumventing the Bail Reform Act by way of the Immigration and Nationality Act. Once an Article II governmental authority invokes the Court's Article III jurisdiction over a criminal defendant, the executive agency must cede control of the Defendant to the Article III Court while the case against the defendant is pending. Neither Congress nor the Court can countenance the usurpation of the Bail Reform Act and this Court's jurisdiction over the defendant.

The Court will not be put in the position of arbitrating policy decisions between the Department of Justice and the Department of Homeland Security. Any dispute between agencies of the executive branch of the United States should be resolved between the agencies. Finally, the United States' argument that Congress created this conundrum, and they can do nothing to effectuate an agreement between agencies, is belied by the facts of this case. As previously noted, the Assistant United States Attorney made an interagency request that ICE honored, and ICE

relinquished custody of the defendant without any court assistance or intervention. This action demonstrates that ICE is deferring to the United States Attorney's prosecution of the defendant, and is willing to delay her administrative removal. By its own actions, ICE has indicated that it does not intend to deport or remove the defendant prior to trial.

The Court has previously determined and reiterates that, in light of the fact that the government's appeal of the defendant's release was pending while she was in ICE's custody, it finds that the defendant's detention was not a deliberate effort to circumvent the Magistrate Judge's order of release. Accordingly, for the reasons as stated and for good cause, it is

ORDERED that, consistent with the order entered on October 19, 2018 (doc. 31), the government's appeal (doc. 18) be and is hereby DENIED.

Done this the 6th day of March, 2019.

    /s/Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE